UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY,<br><br>               Plaintiff,<br><br>v.<br><br>SAIID FOROUZAN RAD and R. PHILIP NOURAFCHAN,<br><br>               Defendants. | Case No. 2:14-cv-01947-APG-PAL<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>(Dkt. #9) |

Plaintiff Branch Banking and Trust Company ("BB&T") filed suit against defendants Saiid Forouzan Rad and R. Philip Nourafchan for breach of a guaranty. Rad and Nourafchan move to dismiss the complaint on the grounds of issue preclusion, claim preclusion, and the statute of limitations. Rad and Nourafchan also contend BB&T has suffered no loss. I deny the motion to dismiss.

## I. BACKGROUND

Defendants Rad and Nourafchan formed R&S St. Rose, LLC ("R&S") in 2005 to buy real property in Henderson, Nevada with the intent of selling it to Centex Homes. (Dkt. #10-2 at 8-9.)[1] Rad and Noroufchan also formed another company, R&S St. Rose Lenders, LLC ("St. Rose Lenders"), for the purpose of borrowing funds from individual lenders and loaning those funds to R&S, with the funds to be secured by a deed of trust on the real property. (*Id.*)

R&S purchased the property for over $45 million. (*Id.* at 8.) R&S obtained the funds to purchase the property from (1) a $29 million purchase loan from Colonial Bank secured by a first

---

[1] I may take judicial notice of the fact that documents were filed in a state court proceeding, but I do not take judicial notice of the truth of the matters stated within those filings. *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001). However, both parties refer to the state court's findings of fact and conclusions of law (Dkt. #10-2) to establish background facts and provide context. I do the same, without any finding that the facts recited in the state court's ruling are true.

position deed of trust on the property, (2) an $8 million earnest money deposit from Centex Homes, and (3) a $12 million loan from St. Rose Lenders secured by a second position deed of trust on the property. (*Id.* at 8-10.) The funds from St. Rose Lenders were obtained from individual private investors, including Robert Murdock and Eckley Keach. (*Id.* at 11.)

Centex Homes later decided not to purchase the property and forfeited the $8 million earnest money deposit. (*Id.* at 12.) Approximately six months later, R&S and Colonial Bank modified the first position deed of trust by extending the maturity date in an effort to avoid foreclosure. (*Id.*) Colonial Bank and R&S later entered into a $43 million construction loan, with a note secured by a deed of trust on the property. (*Id.* at 15, 17; Dkt. #1 at 2-3, 8-74; Dkt. #33 at 2.) The proceeds from this loan were used to pay off the prior purchase loan with Colonial Bank and to pay for constructing improvements on the property. (Dkt. #10-2 at 15, 17; Dkt. #1 at 2, 9; Dkt. #33 at 2.) The $43 million construction loan was personally guaranteed by Rad and Nourafchan. (Dkt. #16-5 at 48-55; Dkt. #33 at 2.)

The note for the construction loan came due on January 30, 2009, but R&S failed to pay. (Dkt. #1 at 3; Dkt. #33 at 2.) In April 2009, Colonial Bank demanded payment from R&S, as well as from Rad and Nourafchan as guarantors, but no one paid off the loan. (Dkt. #33 at 2.)

Colonial Bank filed suit in state court alleging that its deed of trust securing the $43 million construction loan had priority over St. Rose Lenders' deed of trust securing the $12 million loan. (Dkt. #16-5 at 1-14.) Colonial Bank's lawsuit was consolidated with a lawsuit previously filed by Murdock and Keach against Rad, Nourafchan, R&S, and St. Rose Lenders. (Dkt. #10-2 at 3-4.)

Shortly after Colonial Bank filed suit, the FDIC took over as receiver for Colonial Bank. (Dkt. #1 at 88-90.) On August 14, 2009, the FDIC entered into a Purchase and Assumption Agreement with BB&T which purported to transfer Colonial Bank's assets to BB&T. (Dkt. #16-2–16-4.)

BB&T then filed a second amended complaint in the state court action substituting itself for Colonial Bank and asserting claims against Rad, Nourafchan, R&S, and St. Rose Lenders.

(Dkt. #10-2 at 4; Dkt. #10-7.) All of BB&T's claims related to whether the Colonial Bank deed of trust securing the construction loan had priority over the St. Rose Lenders deed of trust. (Dkt. #10-7.) BB&T did not assert a claim against Rad, Nourafchan, or R&S for failure to pay on the note or guaranty. (*Id.*) St. Rose Lenders filed a counterclaim seeking priority over the Colonial Bank deed of trust. (Dkt. #10-2 at 4.)

The state court held a non-jury trial in the consolidated cases in early 2010 regarding the priority of the competing liens. (Dkt. #10-2 at 2.) BB&T attempted to show it owned the note and deed of trust related to the construction loan by producing the Purchase and Assumption Agreement between BB&T and the FDIC. (*Id.* at 5.) During the trial, the court indicated that the Agreement would not suffice to prove ownership of the note and deed of trust, so it directed BB&T to return the next day with further evidence. (*Id.*) BB&T returned with two new documents: a November 2009 assignment and an executed but unrecorded assignment. (*Id.* at 6.) The November 2009 assignment states that the FDIC, as Colonial Bank's receiver, assigned to BB&T all of its rights and interests in any loans and deeds of trust owned by Colonial Bank as of August 14, 2009 in the State of Nevada, along with the related notes and loan documents. (Dkt. #1 at 86-87.) The court excluded both of these exhibits because they were not previously disclosed. (Dkt. #10-2 at 6.) BB&T then attempted to substitute in the FDIC or Colonial Bank if the state court were inclined to find BB&T had not met its burden of establishing it owned the note and deed of trust, but the court denied that motion. (*Id.*)

The state trial court entered its findings of fact and conclusions of law on June 23, 2010. (Dkt. #10-2.) It held that BB&T had not met its evidentiary burden of proving it received an assignment of Colonial Bank's interest in the construction loan deed of trust. (*Id.* at 5.) Specifically, the court found that the Purchase and Assumption Agreement "did not clearly transfer the loan, note and deed of trust at issue." (*Id.* at 5.) The court found the Agreement "was not sufficient evidence, on its face, to establish that BB&T was assigned the 2007 Colonial Bank Deed of Trust" because (1) the agreement referred to attached schedules but no such schedules existed and (2) it excluded certain assets from the sale but it was unclear whether the fraud claims

against Rad and Nourafchan[2] fell into this category. (*Id.* at 8, 23-24.) The court found the Agreement was "internally inconsistent and incomplete, and prevents the Court from making a finding as to whether an assignment of the loan at issue has occurred." (*Id.* at 24.) As a result, the court concluded that BB&T had not shown it owned the claims it was pursuing. (*Id.* at 25.) The court then held the St. Rose Lenders' deed of trust was in first priority position. (*Id.* at 28.)

BB&T appealed to the Supreme Court of Nevada, which affirmed the trial court's decision and later denied reconsideration en banc. (Dkt. #10-3; Dkt. #10-4.) BB&T petitioned the United States Supreme Court for a writ of certiorari, but that was denied in October 2014. (Dkt. #10-5.)

Meanwhile, in July 2010, BB&T filed a second lawsuit in state court against Rad and Nourafchan based on their personal guaranty of the construction loan. (Dkt. #10-8.) BB&T asserted that the FDIC had transferred the guaranty to BB&T through the 2009 Purchase and Assumption Agreement. (*Id.* at 4.) The state court dismissed that action without prejudice. (Dkt. #10-10.) The court ruled that the issue of whether BB&T received a valid assignment had already been litigated in the prior lawsuit and BB&T lost at the trial level, so BB&T would have to prevail on appeal in the first action in order to bring the second action. (Dkt. #16-5 at 32-35.)

In April 2011, R&S filed for bankruptcy. (Dkt. #10-11 at 3.) Through the bankruptcy proceedings, R&S sold the property to a third party for $13,500,000. (*In re R&S St. Rose, LLC*, No. 11-14974-MKN, Dkt. #302.) Following the sale, most of the proceeds were distributed to St. Rose Lenders. (*Id.*, Dkt. #380, #381, #389.)

In July 2011, BB&T recorded an Assignment and Assumption of Deed of Trust, Loan Documents, and Associated Documents and Rights. (Dkt. #16-5 at 37-46.) This assignment states that the FDIC, as receiver for Colonial Bank, assigned to BB&T the promissory note for the construction loan, the deed of trust, the construction loan agreement, and all documents connected with that agreement, including guaranties. (*Id.* at 38-39.) The assignment also transfers to BB&T:

---

[2] BB&T alleged that Rad and Nourafchan misled the escrow agent into believing they would reconvey the St. Rose Lender's deed of trust so that it would be subordinate to the Colonial Bank deed of trust for the construction loan. (Dkt. #16-5 at 25-28.)

> [a]ll other rights of [FDIC], . . . connected or associated with, arising from, or otherwise related to the Note, Deed of Trust, Loan Documents, Loan, Security Instruments, Title Policy, Property, and/or the Instruments and Rights, including, without limitation, all legal or equitable rights, obligations, claims, or causes of action directly or indirectly related to any of the foregoing . . . .

(*Id.*) The assignment was signed in June 2011 but states that it "shall be deemed effective as of August 14, 2009." (*Id.* at 40, 42.)

In November 2014, BB&T filed this lawsuit against Rad and Nourafchan, alleging it is Colonial Bank's successor-in-interest based on (1) the Purchase and Assumption Agreement, (2) the November 2009 assignment, (3) the July 2011 assignment, and (4) an allonge to the promissory note. (*Id.* at 4.) BB&T brings claims for breach of contract and breach of the covenant of good faith and fair dealing based on the guaranty.

Rad and Nourafchan move to dismiss, arguing that BB&T's claims are barred by issue and claim preclusion. They also argue BB&T's claims are barred by two statutes of limitations. Finally, they contend BB&T has suffered no damages based on a Loss Share Agreement between the FDIC and BB&T. BB&T responds that none of these grounds supports dismissal.

## II. ANALYSIS

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

### A. Issue preclusion

Rad and Nourafchan argue that BB&T's claims are barred by issue preclusion because the first state court action already ruled that BB&T did not receive a valid assignment of the

construction loan and deed of trust, and that ruling has become final. They thus contend BB&T cannot re-litigate that issue.

BB&T responds that issue preclusion does not bar its claims because the 2011 assignment is new evidence that was not presented in the state court action, so there are new issues that were not previously litigated. BB&T also argues that the state court action revolved around the priority of the liens when they were created and did not involve claims about the later breach of the guaranty. And BB&T contends the issues of the assignment and breach of the guaranty were not actually litigated in the prior state court case.

In reply, Rad and Nourafchan contend that the 2011 assignment does not aid BB&T because the state court proceeding became final years after the 2011 assignment. They argue BB&T should not be allowed to use the 2011 assignment to undo years of litigation in state court. They also assert that this action is attempting to re-litigate the state court's ruling that BB&T failed to prove it owns the construction loan and that BB&T's ability to enforce the guaranty is tied to that ruling. They also contend BB&T is attempting to re-litigate the state court's ruling in the second state court lawsuit to enforce the guaranty, which was dismissed pending resolution of the appeal in the first action.

I give a "state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Ross v. Alaska*, 189 F.3d 1107, 1110-11 (9th Cir. 1999) (quotation omitted). In Nevada, for issue preclusion to apply: "(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; . . . (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated." *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008) (en banc) (quotation and internal footnote omitted). The party seeking to assert issue preclusion against another party bears the burden of proving the prior judgment's preclusive effect. *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 718 (Nev. 2009) (en banc).

Rad and Nourafchan have not met their burden of showing the first state court action has issue preclusive effect because the issues are not identical. The transfer of the guaranty was not an issue in the first state court case, nor was the validity or enforceability of the 2011 assignment or the allonge to the note. As a result, none of these issues was actually and necessarily litigated in the first state court action. Although Rad and Nourafchan argue the state court proceedings became final after the 2011 assignment, they have presented no evidence that the 2011 assignment was ever litigated in the state court proceedings. Additionally, the first state court action did not affirmatively determine that BB&T did not own the construction loan and related documents. Rather, the state court found BB&T had not presented sufficient evidence to show that it did. Even if the state court made that finding and the assignment to BB&T was thus ineffective, nothing would prevent the FDIC from later assigning the note and guaranty to BB&T, as it allegedly did through the 2011 assignment. Accordingly, the first state court action does not have issue preclusive effect in this case.

Nor does the second state court action. There was no final ruling on the merits in that case. It was dismissed without prejudice. Even if the state court intended this ruling to become preclusive if BB&T lost its appeal in the first state court action, the second state court complaint was filed and dismissed in 2010, before the 2011 assignment. Consequently, the issues in the two cases are not identical and the validity and enforceability of the 2011 assignment was not actually and necessarily litigated in the second state court action. I therefore deny Rad and Nourafchan's motion to dismiss based on issue preclusion.

**B. Claim preclusion**

Rad and Nourafchan argue BB&T's claims are barred by claim preclusion because BB&T could have brought claims for breach of the guaranty in the state court action but did not. BB&T responds by arguing the prior state case does not involve the same facts and alleged wrongful conduct because that case involved the priority of the competing deeds of trust while this case involves a breach of the guaranty. Additionally, BB&T argues that even if claim preclusion applied, an exception should be made where barring a claim would undermine Nevada's

deficiency statutes. According to BB&T, Nevada law permits the holder of a secured interest to proceed separately on its security interest and a guaranty. BB&T also argues that Rad and Nourafchan agreed in the guaranty that BB&T could split its claims.

Claim preclusion applies if: "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case."[3] *Five Star Capital Corp.*, 194 P.3d at 713 (internal footnote omitted). A claim "could have been brought" in the first lawsuit if it is "based on the same facts and alleged wrongful conduct . . . as in the first suit." *Id.* at 715; *see also id.* at 713-14 (stating "claim preclusion applies to preclude an entire second suit that is based on the same set of facts and circumstances as the first suit").

Even when the elements of claim preclusion are present, there are exceptions to its application. *G.C. Wallace, Inc. v. Eighth Judicial Dist. Ct. of State, ex rel. Cnty. of Clark*, 262 P.3d 1135, 1139 (Nev. 2011). Nevada looks to the Restatement (Second) of Judgments § 26 for guidance. *Id.* For example, claim preclusion may not apply where the statutory scheme permits a plaintiff to split its claim. *Id.* (citing Restatement § 26(1)(d) for this exception). Additionally, § 26(1)(a) provides an exception where the parties have agreed that the plaintiff may split its claim. As explained in comment a to § 26, "[a] main purpose of the general rule . . . is to protect the defendant from being harassed by repetitive actions based on the same claim. The rule is thus not applicable where the defendant consents, in express words or otherwise, to the splitting of the claim."

Rad and Nourafchan expressly agreed to allow multiple lawsuits until the indebtedness was paid in full. The guaranty states:

> The obligations of Guarantor hereunder are independent of the obligations of Borrower and, to the extent permitted by law, in the event of any default hereunder, a separate action or actions may be brought and prosecuted against Guarantor whether or not Borrower is joined therein or a separate action or actions

---

[3] *Weddell v. Sharp* modified the "same parties" prong to include situations where the "defendant can demonstrate that he or she should have been included as a defendant in the earlier suit and the plaintiff fails to provide a good reason for not having done so." 350 P.3d 80, 85 (Nev. 2015) (en banc) (quotation omitted). Because the parties in the lawsuits are the same, I need not consider the modified test.

are brought against Borrower. Lender may maintain successive actions for other defaults. Lender's rights hereunder shall not be exhausted by its exercise of any of its right or remedies or by any such action or by any number of successive actions until and unless all indebtedness and obligations, the payment and performance of which are hereby guaranteed, have been paid and fully performed.

(Dkt. #16-5 at 52.) Consequently, even if claim preclusion otherwise would apply, Rad and Nourafchan contractually agreed that the lender could pursue successive lawsuits to collect under the guaranty.

Further, not all of the elements of claim preclusion apply. BB&T could not have effectively litigated the 2011 assignment in the first state court lawsuit because by the time that assignment was executed, the evidentiary record in the state court case was closed and the matter was on appeal.

As for the second state court lawsuit, it did not result in a valid final judgment because it was dismissed without prejudice. *Five Star Capital Corp.*, 194 P.3d at 713 n.27 (stating a valid final judgment "does not include a case that was dismissed without prejudice or for some reason (jurisdiction, venue, failure to join a party) that is not meant to have preclusive effect"). Additionally, the present lawsuit includes new facts that post-date the complaint and subsequent dismissal in the second state court lawsuit. BB&T could not have brought a claim in 2010 based on the 2011 assignment. Consequently, I deny Rad and Nourafchan's motion to dismiss based on claim preclusion.

**C. The six-month limitation period in Nevada Revised Statutes § 40.455.**

Rad and Nourafchan argue that BB&T is attempting to obtain a deficiency judgment after the sale of the property but the six-month statute of limitations in Nevada Revised Statutes § 40.455 has expired. BB&T responds that a sale by a debtor-in-possession under Bankruptcy Code section 363 does not trigger the six-month limitation period in § 40.455. Alternatively, BB&T contends that as assignee of the FDIC, it is entitled to a six-year limitation period under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989.

Section 40.455 governs deficiency judgments. That section requires a secured creditor to seek a deficiency judgment "within 6 months after the date of the foreclosure sale or the trustee's sale held pursuant to NRS § 107.080, respectively. . . ." By its unambiguous language,

§ 40.555(1) does not apply to a sale of property by a debtor-in-possession in bankruptcy. *See Karcher Firestopping v. Meadow Valley Contractors, Inc.*, 204 P.3d 1262, 1263 (Nev. 2009) (en banc) ("If a statute's language is clear and unambiguous, this court will apply its plain language."). A sale by the debtor-in-possession in bankruptcy is not a foreclosure sale under Nevada law. Section 40.462(4) defines a "foreclosure sale" to mean "the sale of real property to enforce an obligation secured by a mortgage or lien on the property, including the exercise of a trustee's power of sale pursuant to NRS 107.080." A debtor-in-possession is not "enforcing" a secured obligation when it sells its own property encumbered by another party's security interest. Nor is it conducting a trustee's sale pursuant to § 107.080. That section confers a power of sale on trustees under trust agreements for "any transfer in trust of any estate in real property . . . to secure the performance of an obligation or the payment of any debt. . . ." Nev. Rev. Stat. § 107.080(1). In other words, it refers to non-judicial foreclosures performed by trustees with the power of sale in a deed of trust. It does not refer to a debtor-in-possession as trustee of a bankruptcy estate. I therefore deny Rad and Nourafchan's motion to dismiss BB&T's claims as time-barred under § 40.555.

### D. The six-year limitation period for contract claims

Rad and Nourafchan also argue BB&T's claims are time-barred under the six-year limitations period for breach of contract claims because R&S made the last payment on the loan in September 2008, but this lawsuit was filed more than six years later, in November 2014. BB&T responds that Rad and Nourafchan present no evidence that the last payment was in September 2008, and the complaint's allegations that the payment became due in January 2009 and demand was made in April 2009 should therefore control.

Rad and Nourafchan present no evidence that the last payment was made in September 2008. I therefore rely on the complaint's allegations—which I accept as true at the dismissal stage—to determine whether the statute of limitations bars BB&T's claims.

Nevada has a six-year limitation period for claims asserting breach of a written contract. Nev. Rev. Stat. § 11.190(1)(b). According to the complaint, the loan balance was due on January

30, 2009. (Dkt. #1 at 3.) Colonial Bank made demand on Rad and Nourafchan on April 3, 2009 and requested payment within 15 days but no payment was made. (*Id.*) The complaint was filed less than six years later on November 21, 2014. I therefore deny Rad and Nourafchan's motion to dismiss based on the six-year limitation period for written contract claims.

### E. Loss Share Agreement with the FDIC

Finally, Rad and Nourafchan contend that BB&T is not damaged because the FDIC paid BB&T under a Loss Share Agreement and Nevada's deficiency statutes prohibit a secured party obtaining a double recovery from insurance. BB&T responds that the Nevada deficiency statutes do not apply because the property was sold through bankruptcy and not through a foreclosure sale. Alternatively, BB&T argues that even if these statutes apply, the Loss Share Agreement is not "insurance." Additionally, BB&T argues the Loss Share Agreement is not intended for the benefit of third parties, such as Rad and Nourafchan.

Rad and Nourafchan present no evidence of the Loss Share Agreement or what BB&T received under it. Taking as true the well-pleaded allegations in the complaint, at this time I have no basis to conclude that BB&T has not suffered any damages.[4] I therefore deny Rad and Nourafchan's motion to dismiss on the basis of a Loss Share Agreement.

## III. CONCLUSION

IT IS THEREFORE ORDERED that defendants' motion to dismiss **(Dkt. #9) is DENIED**.

DATED this 24th day of September, 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[4] Other judges in this District have found a Loss Share Agreement with the FDIC does not constitute "an insurance policy" within the meaning of § 40.459(2). These judges reason that the bank is required to refund the FDIC if it recovers on a defaulted loan so the bank will not reap a double recovery by receiving funds from the FDIC while also collecting on the loan from the debtor. *See, e.g., Branch Banking & Trust Co. v. Sossaman & Guadalupe Plaza, LLC*, 47 F. Supp. 3d 1083, 1097-98 (D. Nev. 2014); *Branch Banking & Trust Co. v. Frank, et al.*, No. 2:11-cv-01366-JCM-CWH, 2013 WL 5428112, at *6-7 (D. Nev. Sept. 26, 2013). I need not reach this issue because Rad and Nourafchan have not shown BB&T suffered no damages.