UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

BRANCH BANKING AND TRUST COMPANY,

Plaintiff,

v.

SAIID FOROUZAN RAD, *et al.*,

Defendants.

Case No. 2:14-cv-01947-APG-PAL

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

(ECF No. 38)

Plaintiff Branch Banking and Trust Company ("BB&T") filed suit against defendants Saiid Forouzan Rad and R. Philip Nourafchan for breach of a guaranty. BB&T moves for summary judgment because the parties stipulated that Rad and Nourafchan executed personal guarantees, the underlying loan defaulted, and Rad and Nourafchan defaulted under the terms of the guarantees. *See* ECF Nos. 33; 36 at ¶ 27. I grant BB&T's motion.

**I.    BACKGROUND**

Defendants Rad and Nourafchan formed R&S St. Rose, LLC ("R&S") in 2005 to buy real property in Henderson, Nevada with the intent of selling it to Centex Homes. ECF No. 10-2 at 8-9.[1] Rad and Nourafchan also formed another company, R&S St. Rose Lenders, LLC ("St. Rose Lenders"), for the purpose of borrowing funds from individual lenders and loaning those funds to R&S, with the funds to be secured by a deed of trust encumbering the real property. *Id.*

R&S purchased the property for over $45 million. *Id.* at 8. R&S obtained the purchase money from (1) a $29 million purchase loan from Colonial Bank secured by a first position deed

---

[1] I may take judicial notice of the fact that documents were filed in state court proceedings, but I do not take judicial notice of the truth of the matters stated within those filings. *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001). Both parties refer to the state court's findings of fact and conclusions of law to establish background facts and provide context. I do the same, without finding that the facts recited in the state court's rulings are true.

of trust on the property, (2) an $8 million earnest money deposit from Centex Homes, and (3) a $12 million loan from St. Rose Lenders secured by a second position deed of trust on the property. *Id.* at 8-10. The funds from St. Rose Lenders were obtained from individual private investors, including Robert Murdock and Eckley Keach. *Id.* at 11.

Centex Homes later decided not to purchase the property and forfeited the $8 million earnest money deposit. *Id.* at 12. Approximately six months later, R&S and Colonial Bank modified the first position deed of trust by extending the maturity date in an effort to avoid foreclosure. *Id.* Colonial Bank and R&S later entered into a $43 million construction loan with a note secured by a deed of trust on the property. *Id.* at 15, 17; ECF Nos. 1 at 2-3, 8-74; 33 at 2. The proceeds from this loan were used to pay off the prior purchase loan from Colonial Bank and to pay for constructing improvements on the property. ECF Nos. 10-2 at 15, 17; 1 at 2, 9; 33 at 2. The $43 million construction loan was personally guaranteed by Rad and Nourafchan. ECF Nos. 16-5 at 48-55; 33 at 2.

The note for the construction loan came due on January 30, 2009, but R&S failed to pay. ECF No. 33 at 2. In April 2009, Colonial Bank demanded payment from R&S, as well as from Rad and Nourafchan as guarantors, but no one paid off the loan. *Id.*

Four lawsuits followed. The first lawsuit was filed by Murdock and Keach against Rad, Nourafchan, R&S, and St. Rose Lenders and was consolidated with a lawsuit by Colonial Bank. Colonial Bank alleged that its deed of trust securing the $43 million construction loan had priority over St. Rose Lenders' deed of trust securing the $12 million loan. ECF No. 16-5 at 1-14.

Shortly after Colonial Bank filed suit, the FDIC took over as receiver for Colonial Bank and entered into a Purchase and Assumption Agreement with BB&T, which purported to transfer Colonial Bank's assets to BB&T. ECF No. 16-2–16-4. BB&T then substituted itself for Colonial Bank, amended the complaint, and asserted claims against Rad, Nourafchan, R&S, and St. Rose Lenders. ECF Nos. 10-2 at 4; 10-7. All of BB&T's claims related to whether the Colonial Bank deed of trust securing the construction loan had priority over the St. Rose Lenders deed of trust. ECF No. 10-7. BB&T did not assert a claim against Rad, Nourafchan, or R&S for failure to pay

on the note or guaranty. *Id.* St. Rose Lenders filed a counterclaim seeking priority over the Colonial Bank deed of trust. ECF No. 10-2 at 4.

The state court held a non-jury trial in the consolidated cases in early 2010 regarding the priority of the competing liens. *Id.* at 2. BB&T attempted to show it owned the note and deed of trust related to the construction loan by producing the Purchase and Assumption Agreement between BB&T and the FDIC. *Id.* at 5. During the trial, the court indicated that the Agreement would not suffice to prove ownership of the note and deed of trust, so it directed BB&T to return the next day with further evidence. *Id.* BB&T returned with two new documents: a November 2009 assignment and an executed but unrecorded assignment. *Id.* at 6. The November 2009 assignment states that the FDIC, as Colonial Bank's receiver, assigned to BB&T all of its rights and interests in any loans and deeds of trust owned by Colonial Bank as of August 14, 2009 in the State of Nevada, along with the related notes and loan documents. ECF No. 1 at 86-87. The court excluded both of these exhibits because they were not previously disclosed. ECF No. 10-2 at 6. BB&T then attempted to substitute in the FDIC or Colonial Bank if the state court were inclined to find BB&T had not met its burden of establishing it owned the note and deed of trust, but the court denied that motion. *Id.*

The state trial court entered its findings of fact and conclusions of law on June 23, 2010. *Id.* It held that BB&T had not met its evidentiary burden of proving it received an assignment of Colonial Bank's interest in the construction loan deed of trust. *Id.* at 5. Specifically, the court found that the Purchase and Assumption Agreement "did not clearly transfer the loan, note and deed of trust at issue." *Id.* The court found the Agreement "was not sufficient evidence, on its face, to establish that BB&T was assigned the 2007 Colonial Bank Deed of Trust" because (1) the agreement referred to attached schedules but no such schedules existed and (2) it excluded certain assets from the sale but it was unclear whether the fraud claims against Rad and Nourafchan[2] fell into this category. *Id.* at 8, 23-24. The court found the Agreement was "internally inconsistent

---

[2] BB&T alleged that Rad and Nourafchan misled the escrow agent into believing they would re-convey the St. Rose Lender's deed of trust so that it would be subordinate to the Colonial Bank deed of trust for the construction loan. ECF No. 16-5 at 25-28.

and incomplete, and prevents the Court from making a finding as to whether an assignment of the loan at issue has occurred." *Id.* at 24.  As a result, the court concluded that BB&T had not shown it owned the claims it was pursuing. *Id.* at 25.  The court then held the St. Rose Lenders' deed of trust was in first priority position. *Id.* at 28.

Meanwhile, in July 2010, BB&T filed another lawsuit in state court against Rad and Nourafchan based on their personal guaranty of the construction loan. ECF No. 10-8.  BB&T asserted that the FDIC had transferred the guaranty to BB&T through the 2009 Purchase and Assumption Agreement. *Id.* at 4.  The state court dismissed that action without prejudice. ECF No. 10-10.  The court ruled that the issue of whether BB&T received a valid assignment had already been litigated in the prior lawsuit and BB&T lost at the trial level, so BB&T would have to prevail on appeal in the first action to bring the second action. ECF No. 16-5 at 32-35.

In April 2011, R&S filed for bankruptcy. ECF No. 10-11 at 3.  Through the bankruptcy proceedings, R&S sold the property to a third party for $13,500,000. (*In re R&S St. Rose, LLC*, No. 11-14974-MKN, ECF No. 302).  Following the sale, most of the proceeds were distributed to St. Rose Lenders. *Id.*

In July 2011, BB&T recorded an Assignment and Assumption of Deed of Trust, Loan Documents, and Associated Documents and Rights. ECF No. 16-5 at 37-46.  This assignment states that the FDIC, as receiver for Colonial Bank, assigned to BB&T the promissory note for the construction loan, the deed of trust, the construction loan agreement, and all documents connected with that agreement, including guaranties. *Id.* at 38-39.  The assignment also transfers to BB&T:

> [a]ll other rights of [FDIC], . . . connected or associated with, arising from, or otherwise related to the Note, Deed of Trust, Loan Documents, Loan, Security Instruments, Title Policy, Property, and/or the Instruments and Rights, including, without limitation, all legal or equitable rights, obligations, claims, or causes of action directly or indirectly related to any of the foregoing . . . .

*Id.*  The assignment was signed in June 2011 but states that it "shall be deemed effective as of August 14, 2009." *Id.* at 40, 42.

In November 2014, BB&T filed this lawsuit against Rad and Nourafchan, alleging it is Colonial Bank's successor-in-interest based on (1) the Purchase and Assumption Agreement, (2) the November 2009 assignment, (3) the July 2011 assignment, and (4) an allonge to the

promissory note. *Id.* at 4. BB&T brings claims for breach of contract and breach of the covenant of good faith and fair dealing based on the guaranty.

On February 2, 2015, Rad and Nourafchan moved to dismiss on the grounds of issue preclusion, claim preclusion, and the statute of limitations. ECF No. 35. I held that issue preclusion did not bar BB&T's action because (1) the transfer of the guaranty and the validity of the 2011 assignment were not issues in the first state court case and (2) the second state court case was dismissed without prejudice. *Id.* I also held that claim preclusion did not bar BB&T's action because Rad and Nourafchan expressly agreed to allow multiple lawsuits until the debt was paid in full. *Id.* And I held that Nevada's six-year limitation period applied and did not bar BB&T's action because the complaint alleged that Colonial Bank made demand on Rad and Nourafchan on April 3, 2009 and filed suit on November 21, 2014. *Id.*

BB&T now moves for summary judgment on its breach of contract claim and seeks $44,517,158.59 in damages. Rad and Nourafchan oppose the motion on the grounds of the law of the case and statute of limitations. They also contend BB&T failed to mitigate its damages and that its damages should be offset for several reasons.

## II.  ANALYSIS

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.

2000). I view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A. Breach of Contract

BB&T argues that it is entitled to summary judgment in the amount of $44,517,158.59 for its breach of contract claim. Although Rad and Nourafchan do not oppose this portion of BB&T's motion, I must determine whether BB&T has satisfied its initial burden under Rule 56. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In Nevada, a plaintiff must satisfy three elements to succeed on a breach of contract claim: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage as a result of the breach. *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 920 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865)).

BB&T produced evidence to support each element. The stipulation between the parties supports BB&T's allegation that Rad and Nourafchan executed a valid contract with Colonial Bank, that they breached the contract, and have not repaid any amounts due in connection with it. *See* ECF No. 33 at 2–3. BB&T also provided evidence supporting its allegation that the FDIC validly assigned the contracts to BB&T. *See* ECF No. 38 at Exs. 9–10. And it provided evidence to support its calculation of $44,517,158.59 in damages as of October 16, 2015. *See* ECF No. 38 at Ex. 1, 6. BB&T has therefore met its initial burden of demonstrating the absence of a genuine issue of material fact for trial.

### B. Law of the Case

In opposition, Rad and Nourafchan argue that summary judgment is inappropriate "because of the law of the case arising from the Guarantor Action previously before the State Court prevents BB&T from pursuing" claims here. ECF No. 44 at 17. BB&T responds that the law of the case doctrine is inapplicable to the state court action. BB&T is correct.

"Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Hydrick v. Hunter*, 500 F.3d 978, 986 (9th Cir. 2007) (citation omitted), cert. granted, judgment vacated on other grounds, 556 U.S. 1256 (2009). For the law of the case doctrine to apply, "the issue in

question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'" *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (quoting *Liberty Mut. Ins. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982)); *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) ("[T]he law of the case acts as a bar only when the issue in question was actually considered and decided by the first court."). Rad and Nourafchan argue that state-court decisions bar summary judgment here. They do not. *See Cote*, 51 F.3d at 181. I have already held that the state court actions do not bar BB&T's complaint under the doctrines of issue or claim preclusion. *See* ECF No. 35. The law of the case does not prevent me from entering summary judgment.

### C. Statute of Limitations

Rad and Nourafchan next argue that summary judgment is inappropriate because "genuine issue[s] of material fact exist as to whether BB&T's Complaint . . . is time barred." ECF No. 44 at 22. BB&T responds that a statute-of-limitations defense is a question of law and the undisputed facts show that its action is timely. I agree with BB&T.

"The application of a statute of limitations . . . is a question of law for the court, not for the jury." *Hilao v. Estate of Marcos*, 103 F.3d 767, 779 (9th Cir. 1996); *see also Day v. Zubel*, 922 P.2d 536, 539 (Nev. 1996). I previously applied Nevada's six-year statute of limitations to BB&T's claims. Nev. Rev. Stat. § 11.190(1)(b); ECF No. 35. I rejected Rad and Nourafchan's assertion that the limitations period began in September 2008 because they failed to present evidence supporting this argument and BB&T pleaded that Rad and Nourafchan's payment became due in January 2009. ECF No. 35 at 10.

Rad and Nourafchan now provide a check dated September 29, 2008 to support their assertion that the limitations period expired before BB&T filed suit. ECF No. 44 at Ex. 5. However, the complete loan history provided by BB&T shows that the September 29, 2008 check was not the last payment that Colonial Bank received. *See* ECF No. 49 at 8 (citing Ex. 1 at 93). Payments were received in October 2008, November 2008, December 2008, and January 2009.

*Id.* BB&T's action is therefore timely.[3] *See Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990) ("The general rule concerning statutes of limitation is that a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought."). The limitations period began to run after January 2009, when Colonial Bank stopped receiving funds.

### D.      Failure to Mitigate

Rad and Nourafchan next argue that BB&T did not exercise reasonable care to mitigate its damages because it did not pursue legal action against its title insurance company or a malpractice claim against its prior legal counsel, which represented BB&T in the state court actions. "As a general rule, a party cannot recover damages for loss that he could have avoided by reasonable efforts." *Sheehan & Sheehan v. Nelson Malley & Co.*, 117 P.3d 219, 226 (Nev. 2005). "[T]he burden is upon the party whose wrongful act caused the damages complained of to prove . . . that the damages might have been lessened by reasonable diligence on the part of the aggrieved party." *Cobb v. Osman*, 433 P.2d 259, 263 (Nev. 1967).

Rad and Nourafchan's argument is unpersuasive. In essence, they contend that BB&T should have commenced two lawsuits against other parties before initiating one lawsuit against Rad and Nourafchan, who have stipulated that they "did not pay any of the outstanding amounts due." ECF No. 33 at 2. Although the Supreme Court of Nevada has not decided whether an injured party must commence a separate lawsuit to mitigate damages, "[t]he general rule is that 'injured parties need not . . . institute and prosecute [law] suits' in order to mitigate damages." *Stone v. Satriana*, 41 P.3d 705, 712 (Colo. 2002) (quoting *Robinson v. Carney*, 632 A.2d 106, 108 (D.C. 1993)). If presented with the issue, I believe the Supreme Court of Nevada would adopt the general rule and find that an injured party is not required to pursue legal action to mitigate damages. I therefore reject Rad and Nourafchan's argument that BB&T failed to mitigate its damages.

/ / / /

---

[3] Because BB&T's action is timely under Nevada's six-year statute of limitations, I decline to address BB&T's argument in the alternative that a longer federal limitations period applies.

### E. Offset

Finally, although Rad and Nourafchan do not contest BB&T's calculation of damages, they argue that BB&T's damages should be offset for several reasons. *See* ECF No. 44 at 27–30. They first assert that the consideration BB&T paid the FDIC for the Note is disputed and should offset BB&T's recovery. In support, they rely on a quarterly report that Colonial Bank filed with the Security and Exchange Commission and argue that BB&T paid the FDIC approximately $21 million for the Note. They contend that I should take judicial notice of the filing and conclude that it creates a material dispute for trial. I disagree.

I may take judicial notice of certain filings with the government. *Lee*, 250 F.3d at 690. But as I have previously stated, the doctrine of judicial notice does not permit me to take the facts asserted in the filings as true. *See* ECF No. 35 at 1 n.1 (citing *Lee*, 250 F.3d at 690). Even if it did, the consideration BB&T paid for the loan is irrelevant. Nevada law provides that a guarantor is "liable on his own obligation, which is absolute and independent of the note itself." *Branch Banking & Trust Co. v. Sossaman & Guadalupe Plaza, LLC*, 47 F. Supp. 3d 1083, 1089 (D. Nev. 2014) (citing *Randono v. Turk*, 466 P.2d 218, 223 (Nev. 1970)). There is no dispute that the FDIC assigned to BB&T "all rights" connected to the Note, including the guarantees.

Rad and Nourafchan also argue that summary judgment is inappropriate because BB&T did not properly disclose its damages. But Rad and Nourafchan have not moved to strike BB&T's damages, shown that BB&T's computation of damages is improper under Rule 26, or cited to the record that contains the allegedly improper disclosures. I therefore decline to offset damages on this basis.

Finally, Rad and Nourafchan assert that payments the FDIC may have made to BB&T under a Loss Share Agreement should offset BB&T's damages because the Loss Share Agreement permits BB&T to obtain a double recovery. Courts in this District have repeatedly rejected this argument. *See Branch Banking & Trust Co. v. Sossaman & Guadalupe Plaza, LLC*, 47 F. Supp. 3d 1083, 1098 (D. Nev. 2014); *Branch Banking & Trust Co. v. Frank*, No. 2:11-cv-1366-JCM-CWH, 2013 WL 5428112, at *7 (D. Nev. Sept. 26, 2013); *Branch Banking & Trust*

*Co. v. D.M.S.I.*, LLC, No. 2:11-cv-01778-MMD-VCF, 2013 WL 3200087, at *8 (D. Nev. June 21, 2013). I reject it as well.

### III. CONCLUSION

IT IS THEREFORE ORDERED that BB&T's motion for summary judgment **(ECF No. 38) is GRANTED** with regard to BB&T's breach of contract claim in the amount of $44,517,158.59 as of October 1, 2015. BB&T shall submit a proposed form of judgment that includes an updated interest calculation.

DATED this 1st day of September, 2016.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE